UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL A. KEENAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Docket No. 08-cv-147-P-S |
| INTERNATIONAL ASSOCIATION OF ) | |
| MACHINISTS AND AEROSPACE ) | |
| WORKERS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants' Motion for Summary Judgment (Docket # 44). As explained herein, the Court GRANTS the motion IN PART as to Plaintiffs' federal claims, and DISMISSES WITHOUT PREJUDICE Plaintiffs' state-law claims. In accordance with District of Maine Local Rule 7(f), the Court determines that this matter can be decided without oral argument, and thus DENIES the parties' Motions for Oral Argument (Docket #s 80 & 81).

**I.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Navarro v.

Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. See Santoni, 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e). Of course, "the non-moving party's burden cannot be satisfied with a declaration that without proper explanation contradicts his/her prior deposition testimony." Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citation and internal punctuation omitted). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## II.     FACTUAL BACKGROUND

This dispute arises from the imposition of a trusteeship under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 et seq. Defendant International Association of Machinists and Aerospace Workers ("IAM") is an international labor organization that represents approximately 730,000 members in the

United States and Canada. Defendant R. Thomas Buffenbarger is IAM's International President.

IAM comprises hundreds of Local Lodges, including Local Lodge S6 ("Local S6" or "the Local"), which represents approximately 3,400 employees of Bath Iron Works. Local S6 is affiliated with District Lodge 4, which is located in Maine but provides services in several states. Local S6 and District Lodge 4 are part of the Eastern Territory, which is led by Defendant General Vice President Lynn D. Tucker, Jr.[1]

Plaintiffs Michael Keenan, Troy Osgood, Michael Cyr, and Cathy London are former officers of Local S6. Keenan, Osgood, and Cyr were elected in October 2007. After receiving numerous protests from Local members about that election, including allegations about the integrity of the secret ballot and the security of ballot boxes, Buffenbarger assigned Grand Lodge Representative Paul Shemanski to investigate. Shemanski concluded that the election had been flawed, and as a result, Buffenbarger directed that a new election be held.[2]

During his investigation, Shemanski received additional complaints from Local members about the administration of the Local's affairs. These complaints included allegations that the Local had permitted a considerable backlog of grievances to accrue, and that officers had received improper compensation. Shemanski reported these concerns to his supervisor, Tucker, who directed him to investigate further.

---

[1] Defendant William Rudis is Grand Lodge Representative and reports to Tucker. Defendant Paul Shemanski was also a Grand Lodge Representative reporting to Tucker until April 1, 2008, when he became the Special Assistant to the General Secretary-Treasurer of IAM. Defendant Anthony Provost worked at District Lodge 4 as the Directing Business Representative.

[2] The second election was held on February 12, 2008. Plaintiffs Keenan, Cyr, and Osgood were elected again, by larger margins than before; Plaintiff London, who had not won in October, was also elected.

3

Defendants maintain that Shemanski's month-and-a-half-long investigation revealed an organization in disarray. Specifically, Shemanski discovered a backlog of pending grievances, at least one of which had become time-barred at the Local level; a substantial amount of improperly documented lost-time compensation;[3] a substantial amount of unaccounted-for union label clothing; and the presence of a considerable amount of pornography on the Local's computers. At the close of the investigation, Shemanski and Grand Lodge Representative Bill Rudis recommended to Tucker that Local S6 be placed in trusteeship; on March 12, 2008, Tucker seconded this recommendation to Buffenbarger.

After being provided with the documentation resulting from Shemanski's investigation, Buffenbarger, who was empowered by the IAM Constitution to place Local S6 in trusteeship, concluded that trusteeship was warranted. In accordance with the IAM Constitution, on March 17, 2008, Buffenbarger issued a notice setting forth his reasons for imposing a trusteeship, and convening a hearing during which members would be "free to present testimony in favor of, or against, continuation of the trusteeship."[4] The hearing was later relocated to a larger venue in order to accommodate all Local members who wished to attend.

The hearing before a three-person trial committee was held on April 14-17, 2008. Rudis, as the temporary Trustee, presented the case in support of continuing the trusteeship. He offered opening and closing statements, called three witnesses, and introduced eighty-six exhibits. The witnesses were Shemanski, who testified about his investigation of the complaints he had received; Brian Collis, IAM's computer technician

---

[3] Lost-time payment compensates union officials for missing work due to union business.

[4] (Defs.' Statement of Material Fact (Docket # 45) ¶ 37.)

4

who had examined the Local computers' hard drives and discovered pornography; and William Dameron, an IAM auditor. The exhibits included copies of the pornography discovered on the computers, audit reports and financial records, and a list of purportedly time-barred grievances.

Keenan presented the case against continuing the trusteeship. He too offered opening and closing statements, called his own witnesses, and introduced numerous exhibits. After both sides closed, individual Local members were permitted to address the trial committee. Both sides subsequently submitted post-hearing briefs.

On July 28, 2008, the trial committee submitted to Buffenbarger its conclusion that the evidence was "more than sufficient to demonstrate chronic financial malpractice" at Local S6, and "that the good and welfare of the Local Lodge, as well as the entire IAM, ha[d] been endangered."[5] Although the committee observed that several of the grounds cited in Buffenbarger's notice had not been proven, it determined that four documented problems justified continuation of the trusteeship. Specifically, the committee cited an "enormous backlog of grievances" resulting from "a serious breakdown in grievance processing"; inadequate documentation of lost-time compensation; "an inventory shortfall of nearly $27,000" in union label merchandise; and the presence of pornography on Local computers, which presented the risk of legal liability.[6] Accordingly, the committee recommended continuation of the trusteeship "until such time as all problems in the administration of the Local Lodge have been corrected."[7]

---

[5] (Id. ¶ 47.)

[6] (Id. ¶¶ 49-52.)

[7] (Id. ¶ 53.)

On August 12, 2008, Buffenbarger notified the Local's members that he had accepted the committee's recommendation to continue the trusteeship.

## III. DISCUSSION

Plaintiffs now assert a variety of claims, arising from the imposition of the trusteeship, under the LMRDA and state tort law. Specifically, they allege that Defendants deprived them of rights guaranteed by Title I of the LMRDA (Count 1); imposed the trusteeship for unlawful purposes under Title III of the LMRDA (Count 2); maliciously and recklessly placed them in a false light (Count 3); maliciously and recklessly defamed them (Count 4); and maliciously and recklessly inflicted severe emotional distress (Count 5). (See Compl. (Docket # 1) ¶¶ 40-54.) In moving for summary judgment, Defendants maintain that the trusteeship was imposed lawfully, that a conditional privilege protects their statements about Plaintiffs, and that those statements were not made with actual malice, i.e., knowledge of falsity or reckless disregard for the truth. See New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964).

### A. Federal Claims

#### 1. Title III of the LMRDA

The LMRDA "governs the implementation of trusteeships by labor organizations." Pape v. Local 390 of the Int'l Bhd. of Teamsters, 315 F. Supp. 2d 1297, 1309 (S.D. Fla. 2004). "The legislation was an attempt to respond to abuses within the organized labor movement while minimizing governmental interference with the internal affairs of labor organizations." Morris v. Hoffa, 361 F.3d 177, 186 (3d Cir. 2004) (citation and internal punctuation omitted). To that end, Title III provides:

> In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its

6

> constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws <u>shall be presumed valid</u> for a period of eighteen months from the date of its establishment and <u>shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title</u>.

29 U.S.C. § 464(c) (emphasis added).

The presumption of validity and more searching standard of proof codified in section 464(c) serve "the well-established, soundly based policy of avoiding unnecessary judicial intrusion into the affairs of labor unions." <u>Conway v. Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers</u>, 209 F. Supp. 2d 731, 743 (N.D. Ohio 2002) (citation and internal punctuation omitted); <u>see also</u> <u>Int'l Bhd. of Teamsters v. Local Union No. 810</u>, 19 F.3d 786, 793 (2d Cir. 1994) (LMRDA "is not to be read as an open invitation to federal courts to busy themselves with the internal affairs of unions, a task for which they are ill-equipped, and under which Act they have no broad power to intervene"); <u>Dow v. United Bhd. of Carpenters and Joiners of Am.</u>, 1 F.3d 56, 58 (1st Cir. 1993) ("It is common ground that a labor union's internal affairs comprise an enclave best kept free from judicial intrusion."); <u>Executive Bd. Local 1302, United Bhd. of Carpenters and Joiners of Am. v. United Bhd. of Carpenters and Joiners of Am.</u>, 477 F.2d 612, 615 (2d Cir. 1973) ("Given [section 464(c)], judicial intervention should be undertaken with only the greatest care and caution."). This policy derives from Congress's recognition "that second guessing the judgments culminating in trusteeships could be both difficult and impractical." <u>Morris</u>, 361 F.3d at 187. As a result, this Court will not substitute its own judgment for Defendants' so long as "the trusteeship was imposed as part of an honest, sincere good

faith effort to achieve legitimate goals." Teamsters Local Union No. 406 v. Crane, 848 F.2d 709, 713 (6th Cir. 1988); see also Pape, 315 F. Supp. 2d at 1314.

Because Plaintiffs do not raise a procedural challenge,[8] the Local S6 trusteeship is entitled to a presumption of validity. Again, this statutory presumption may be overcome only "upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a [proper] purpose." 29 U.S.C. § 464(c). Plaintiffs carry the burden of furnishing the required "clear and convincing" proof, and of course, the Court must consider this higher standard of proof at the summary judgment stage. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986); Pape, 315 F. Supp. 2d at 1308-09. Finally, "[a]s long as the trusteeship is supported by at least one proper purpose, it is immaterial that the labor union which imposed the trusteeship also may have had an impermissible motive." Serv. Employees Int'l Union, Local No. 87 v. Serv. Employees Int'l Union, Local No. 1877, 230 F. Supp. 2d 1099, 1105 (N.D. Cal. 2002); see also Morris v. Hoffa, No. CIV.A. 99-5749, 2001 WL 1231741, at *8 (E.D. Pa. Oct. 12, 2001); Mason Tenders Dist. Council of Greater New York. v. Laborers' Int'l Union of N. Am., 884 F. Supp. 823, 836 (S.D.N.Y. 1995).

Defendants have adduced four independently sufficient justifications for imposition of the trusteeship, described above, which plainly qualify as legitimate under section 462.[9]

---

[8] (See Compl. (Docket # 1) ¶¶ 43-44; Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J. (Docket # 63) at 14-20; Defs.' Reply in Support of Mot. for Summ. J. (Docket # 70) at 1.) Assuming Plaintiffs' Complaint could be construed to contain such a challenge, the Court finds that the Local S6 trusteeship was imposed in accordance with the IAM Constitution's procedural requirements and was ratified by a fair hearing. (See Defs.' Statement of Material Fact (Docket # 45) ¶¶ 36–37, 41–46.) See Morris v. Hoffa, 361 F.3d 177, 187 (3d Cir. 2004); Johnson v. Holway, No. Civ.A.03-2513 ESH, 2005 WL 3307296, at *12 (D.D.C. Dec. 6, 2005).

[9] A trusteeship may be imposed "for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring

Indeed, Plaintiffs do not suggest that these justifications were facially improper. Rather, they dispute the factual basis for these justifications. Specifically, Plaintiffs maintain that far fewer grievances, including time-barred grievances, were attributable to the Local's inaction; that lost-time compensation was systematically documented; that discrepancies regarding union label merchandise were attributable to their predecessors' improper accounting practices; and that they were not responsible for the pornography discovered during the course of Collis's investigation. More broadly, Plaintiffs challenge Defendants' justifications as pretextual: the trusteeship was actually imposed, they allege, due to Local S6's unwillingness to contribute to the Machinists' Non-Partisan League ("MNPL") Education Fund, a soft-money fund used to educate IAM members about political issues.

This attempt to relitigate factual disputes previously wrangled during the trusteeship hearing fundamentally misapprehends the scope of the Court's review. See Int'l Bhd. of Teamsters, 19 F.3d at 794. "It is not the role of this Court [] to review the trusteeship panel's decision de novo and weigh the disputed evidence." Pape, 315 F. Supp. 2d at 1314. Rather, the Court's focus "must be on whether the trusteeship was imposed as part of an honest, sincere good faith effort to achieve legitimate goals." Teamsters Local Union No. 406, 848 F.2d at 713. "[A]n honest decision by the international officials is not to be overturned during the first 18 months of the receivership upon a question of fact or of degree or of judgment as to the necessity for imposing it." Id. at 714 (citing S.Rep. No. 187, 86th Cong., 1st Sess., at 18 (1959)).

Nevertheless, the undisputed evidence, when viewed in the light most favorable to Plaintiffs, demonstrates that the trusteeship was established in good faith for at least one

---

democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." 29 U.S.C. § 462.

proper purpose. For example, Plaintiffs do not dispute that a post-trusteeship inventory revealed more than $26,000 worth of unaccounted-for union label clothing since 2002, when Keenan became President of Local S6.[10] In other words, the relevant shortfall dates from Keenan's tenure. Thus, Plaintiffs' explanation that "there was no way to balance the books"[11] does not generate a genuine issue of material fact as to the discrepancies regarding union label merchandise.

Given the existence of at least one proper purpose for establishing the trusteeship, the Court need not consider Plaintiffs' allegations of "additional improper motives," including the factual dispute regarding MNPL contributions. Morris, 2001 WL 1231741, at *8; see also Serv. Employees Int'l Union, Local No. 87, 230 F. Supp. 2d at 1105.

In short, Plaintiffs have failed to generate a genuine issue of material fact sufficient to support a finding "upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a [proper] purpose." 29 U.S.C. § 464(c). Accordingly, the Court grants Defendants' Motion for Summary Judgment (Docket # 44) as to Count Two.

### 2. Title I of the LMRDA

In Count One, Plaintiffs allege that Defendants' actions violated Title I of the LMRDA, which "provides a Bill of Rights for union members, guaranteeing equal rights and privileges to nominate and vote for candidates, as well as freedom of speech and assembly and protection from improper discipline." McCafferty v. Local 254, Serv. Employees Int'l Union, AFL-CIO, 186 F.3d 52, 57 (1st Cir. 1999) (citation and internal

---

[10] (See Defs.' Statement of Material Fact (Docket # 45) ¶ 25; Pls.' Opposing Statement of Material Facts (Docket # 62) ¶ 25; Defs.' Reply Statement of Material Fact (Docket # 71) ¶ 25.)

[11] (Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J. (Docket # 63) at 20.)

punctuation omitted); see 29 U.S.C. § 411.  A "typical Title I claim involves an allegation of unequal treatment among union members."  Id. (citation and internal punctuation omitted); see also Robles v. Int'l Longshoremen Ass'n AFL-CIO, 491 F. Supp. 2d 205, 210 (D.P.R. 2006) ("Title I is an anti-discrimination provision; it protects each union member's equal right to participate in union affairs.").  However, Plaintiffs' Title I claim contains no such allegations.

Rather, Plaintiffs characterize Defendants' imposition of the trusteeship as retaliation for their protected Title I activities, including their persistent criticism of District Lodge 4's financial mismanagement and role in collective bargaining negotiations. So presented, Plaintiffs' Title I claim is simply an "alternative means of challenging the trusteeship's validity," and thus impermissibly attempts to circumvent Title III.  Johnson v. Holway, No. Civ.A.03-2513 ESH, 2005 WL 3307296, at *17 (D.D.C. Dec. 6, 2005). "Once the validity of a trusteeship has been established under Title III, any Title I challenge to its imposition is foreclosed."  Id.; see also Farrell v. Int'l Bhd. of Teamsters, 888 F.2d 459, 461 (6th Cir. 1989); Morris, 2001 WL 1231741, at *10.  To the extent Plaintiffs seek relief for injury that resulted from imposition of the Local S6 trusteeship, they cannot recover under Title I.

To be sure, "Title I rights [do not] fall by the wayside whenever a trusteeship is imposed," Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 356 (1989): Title I also applies "to a trustee's conduct in the administration of a trusteeship."  Johnson, 2005 WL 3307296, at *18.  However, Plaintiffs' Complaint fails to allege that Rudis has exercised his authority in a manner inconsistent with their Title I protections; thus, their Title I claim cannot be construed as a challenge to a trustee's conduct.  Furthermore, to the

11

extent Plaintiffs might have stated a Title I claim for injuries that did not result from imposition of the trusteeship, see Johnson, 2005 WL 3307296, at *20, Count One cannot be so construed. In opposing dismissal of their Title I claim, Plaintiffs focus exclusively on their removal from office.[12]

Because Plaintiffs' removal from office resulted from imposition of the Local S6 trusteeship—a trusteeship that was procedurally and substantively lawful under Title III—this injury cannot ground a proper Title I claim. Beyond their removal from office, Plaintiffs do not explain how their Title I rights were abridged by Defendants; indeed, they fail to consider, more generally, the basic distinction between Titles I and III. Plaintiffs' perfunctory development of their Title I claim constitutes waiver, and thus furnishes an additional ground to grant summary judgment. See Sanford v. Nat'l Ass'n for the Self-Employed, Inc., Civil No. 09-22-P-H, 2009 WL 1448720, at *10 (D. Me. May 21, 2009) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.").

Accordingly, the Court grants Defendants' Motion for Summary Judgment (Docket # 44) as to Count One.

B.   **State Claims**

Plaintiffs also assert state-law claims for false light invasion of privacy (Count Three), defamation (Count Four), and intentional infliction of emotional distress (Count Five). In light of the dismissal of Plaintiffs' LMRDA claims, which provided the source of

---

[12] "It is settled law that removal of an elected union officer is illegal if it is done because the officer has challenged the authority of a higher union officer. His removal disenfranchises the membership. . . . Here, there can be no doubt that the plaintiffs have stated a cause of action, since Tucker all-but-admitted the trusteeship was imposed because Keenan refused to sign checks for a non-collective bargaining cause the members did not want to support." (Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J. (Docket # 63) at 21-22 (emphasis added).)

original federal jurisdiction,[13] the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. See 28 U.S.C § 1367(c)(3).

"As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). "The factors that are supposed to guide the Court's consideration of whether to dismiss pendent claims include comity, judicial economy, convenience and fairness to the litigants." Kropp v. Maine Sch. Admin. Union # 44, Civil No. 06-81-P-S, 2007 WL 551516, at *20 (D. Me. Feb. 16, 2007).

Were the Court well-positioned to determine the remaining state-law claims and thus "spar[e] a busy state court from having to reinvent the wheel," id., it would certainly consider exercising supplemental jurisdiction. Unfortunately, it is not particularly well-positioned. First, the Court believes that the tort claims potentially raise novel issues of state law best resolved in a state forum.[14] See id. Moreover, in moving for summary judgment, Defendants maintain that Plaintiffs have failed to prove by clear and convincing evidence that any allegedly tortious statements were made with actual malice, i.e., knowledge of falsity or reckless disregard for the truth. See Masson v. New Yorker

---

[13] (See Compl. (Docket # 1) ¶ 2.)

[14] By way of example, Plaintiffs allege that after the trusteeship was imposed, District Lodge President Frank Moore stated, in a lunchroom containing twenty-five to thirty people, "if you continue to support Local S6 you're associating with pedophiles." (Pls.' Opposing Statement of Material Facts (Docket # 62) ¶ 82.) This statement may or may not be tortious under Maine law, and a triable issue of fact exists as to whether it was made. (Defs.' Reply Statement of Material Fact (Docket # 71) ¶ 82.) However, given that Moore is not a named defendant in this case, a question exists regarding Defendants' potential vicarious liability for the statement. See Am. Society of Mechanical Eng'rs, Inc. v. Hydrolevel Corp., 456 U.S. 556, 566 (1982) (citing Restatement (Second) of Agency §§ 247, 254); Rippett v. Bemis, 672 A.2d 82, 88 n.5 (Me. 1996) (citing Restatement (Second) of Agency § 2(1)); see also Turgeon v. Operating Eng'rs, Local No. 98, AFL-CIO, 2 Fed.Appx. 176, 179-80 (2d Cir. 2001); Dean v. Am. Fed. of Gov't Employees, Local 476, 509 F. Supp. 2d 39, 58-59 (D.D.C. 2007). Moreover, the current record leaves the Court unable to determine whether a triable issue exists as to Moore's subjective belief in the statement's truth or falsity.

Magazine, Inc., 501 U.S. 496, 510 (1991). But the parties have not identified definitively specific statements as tortious. As the First Circuit recently emphasized, the actual malice standard "is wholly subjective," Levesque v. Doocy, 560 F.3d 82, 90 (1st Cir. 2009), and is thus properly assessed with respect to particular statements and individual speakers.[15] Thus, the parties' failure to identify specific statements, or to present evidence respecting a particular speaker's subjective belief in any statement's veracity, severely complicates the Court's ability to determine Plaintiffs' state-law claims.

Accordingly, in an exercise of its informed discretion, the Court declines to exercise supplemental jurisdiction and DISMISSES WITHOUT PREJUDICE Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(c)(3). See Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996).

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendants' Motion for Summary Judgment (Docket # 44) is hereby GRANTED IN PART as to Plaintiffs' LMRDA claims (Counts One and Two). The Court DISMISSES WITHOUT PREJUDICE Plaintiffs' state-law claims (Counts Three through Five). Judgment shall be entered accordingly.

SO ORDERED.

                                          /s/ George Z. Singal
                                          United States District Judge

Dated this 10th day of July, 2009.

---

[15] See Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 686 (1989); Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 517 n.1 (1984) (Rehnquist, J., dissenting) (explaining that assessment of actual malice requires a "pure historical factual determination . . . as to the actual subjective state of mind of a particular person at a particular time"); Riley v. Harr, 292 F.3d 282, 291-98 (1st Cir. 2002) (considering specific statements).